UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| SAMAT GOGUEV,<br>*Petitioner*<br><br>v.<br><br>KRISTI NOEM, SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY; AND MIGUEL VERGARA, FIELD OFFICE DIRECTOR, SAN ANTONIO FIELD OFFICE, IMMIGRATION AND CUSTOMS ENFORCEMENT;<br>*Respondents* | § § § § § § § § § § § § § § § §    Case No.  SA-25-CA-01593-XR |

## ORDER DENYING PETITON FOR WRIT OF HABEAS CORPUS

On this date, the Court considered Petitioner Samat Goguev's Petition for Writ of Habeas Corpus (ECF No. 1). After careful consideration, the Petition is **DENIED.**

### BACKGROUND

Petitioner Samat Goguev is a native and citizen of Russia who is currently detained in the South Texas Detention Center in Pearsall, Texas. ECF No. 1. He and his family presented themselves at a port of entry on April 26, 2024. ECF No. 4-1. He was placed into removal proceedings, and he and his family have since applied for asylum. ECF No. 1 ¶ 3; ECF No. 1-3.

On April 28, 2024, Petitioner was released from detention on humanitarian parole under 8 U.S.C. Section 1182(d)(5).[1] His parole expired on April 25, 2025. ECF No. 1-2; ECF No. 1 ¶ 22. In November 2025, Immigration and Customs Enforcement ("ICE") re-detained him. ECF No. 1

---

[1] ECF Nos. 1-2 (listing Petitioner's "class of admission" as "DT"); United States Citizenship and Immigration Services, *Adjudicator's Field Manual*, at 176, https://www.uscis.gov/sites/default/files/document/policy-manual-afm/afm23-external.pdf (last visited December 23, 2025) ("DT" indicates that parole under Section 212(d)(5) of the Immigration and Nationality Act was "granted at port of entry or District office."); *Mangru v. Holder*, 592 F. App'x 209, 210 n.1 (4th Cir. 2015) (Section 212(d)(5) is codified at 8 U.S.C. Section 1182(d)(5)).

1

¶ 5. He remains detained in the South Texas Detention Center, and he has not been given a bond hearing.

## DISCUSSION

### I. Legal Standard

A habeas petitioner must show they are "in custody in violation of the Constitution or laws or treaties of the United States." *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (quoting 28 U.S.C. § 2241(c)(3)). The petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Id.* (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) and citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)). "A court considering a habeas petition must 'determine the facts, and dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C. § 2243).

### II. Analysis

The parties dispute whether Respondents have statutory authority to detain Petitioner and whether his detention violates the Due Process Clause of the Fifth Amendment. The Court addresses each issue in turn.

    a. <u>Statutory Authority to Detain Petitioner</u>

Respondents claim that Petitioner is subject to detention without a bond hearing under 8 U.S.C. Section 1225(b)(2)(A). That provision generally requires detention of a noncitizen where "(1) the person is an 'applicant for admission'; (2) the person is 'seeking admission'; and (3) an 'examining immigration officer determines' the person 'is not clearly and beyond a doubt entitled to be admitted.'" *E.g.*, *Perez v. Noem*, No. SA-25-CA-01534-XR, 2025 WL 3654262, at *6 (W.D. Tex. Dec. 5, 2025).

*1. Effect of Humanitarian Parole*

Petitioner argues that Section 1225(b)(2) does not apply here, because he was no longer "seeking admission" when ICE detained him in November 2025. ECF No. 6 at 1. Respondents argue that whether Petitioner was "seeking admission" in November 2025 is irrelevant, because an arriving noncitizen granted parole under Section 1182(d)(5) is still treated as "arriving" after their parole is revoked or expires. *See* ECF No. 4.

Humanitarian parole under Section 1182(d)(5) "shall not be regarded as an admission," and "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled." 8 U.S.C. § 1182(d)(5). "[T]hereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission." *Id.*

Petitioner's parole expired on April 25, 2025. ECF No. 1-2. At that time, he was required to "forthwith return or be returned to the custody from which he was paroled." *Id.*; *Tenemasa-Lema v. Hyde*, No. CV 25-13029-BEM, 2025 WL 3280555, at *3 (D. Mass. Nov. 25, 2025). That is to say, he was to "be restored to the status that he . . . had at the time of parole." 8 C.F.R. §§ 212.5(e)(1)(ii), 212.5(e)(2)(i); 8 C.F.R. § 1001.1 ("[A]n arriving alien remains an arriving alien even if paroled pursuant to [S]ection [1182(d)(5)] and even after any such parole is terminated or revoked.").

Respondents did not re-detain petitioner for several months after his parole expired. "One might expect that, at some point[,]" they "waived [their] right to" do so. *Tenemasa-Lema*, 2025 WL 3280555, at *3. But "as a matter of statutory interpretation and federal common law, courts generally must assume that 'an official's crucial duties are better carried out late than never.'" *Id.* (quoting *Nielsen v. Preap*, 586 U.S. 392, 411 (2019)). Because Respondents have not lost their

statutory authority to return Petitioner to "the custody from which he was paroled," the operative question is whether Section 1225(b)(2) applied to him when he presented himself at the border.

    2. *Section 1225(b)(2)*

It did. Again, Section 1225(b)(2) requires detention of a noncitizen where "(1) the person is an 'applicant for admission'; (2) the person is 'seeking admission'; and (3) an 'examining immigration officer determines' the person 'is not clearly and beyond a doubt entitled to be admitted.'" *E.g.*, *Perez*, 2025 WL 3654262, at *6.

When Petitioner presented himself at the border, he was clearly an "applicant for admission." 8 U.S.C. § 1225(a)(1) (defining "applicant for admission" to include "[a]n alien present in the United States . . . who arrives in the United States (whether or not at a designated port of arrival . . .)").

He was also "seeking admission." "The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A). Again, Petitioner presented himself at the border. And his Notice to Appear says he "applied for admission." ECF No. 4-1. In fact, he does not contest that he was "seeking admission" when he arrived at the border. *See* ECF No. 6 at 1 (saying that Petitioner was "*no longer* 'seeking admission'" as of his November 2025 detention (emphasis added)).

Finally, Petitioner does not claim or provide any evidence that he was "clearly and beyond a doubt entitled to be admitted" when he presented himself at the border.

For those reasons, Section 1225(b)(2) and Section 1182(d)(5) jointly authorize Petitioner's detention as a statutory matter.

b. Due Process

Petitioner also argues that his detention without a bond hearing violates the Fifth Amendment's Due Process Clause. "Detention during removal proceedings is a constitutionally permissible part of that process." *Demore v. Kim*, 538 U.S. 510, 531 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). But that does not mean that *any* detention of *any* person subject to removal proceedings is constitutional. "It is well established that the Fifth Amendment entitles aliens to due process of law in [removal] proceedings." *Id.* at 523; *see also Mathews v. Diaz*, 426 U.S. 67, 77 (1976) ("There are literally millions of aliens within the jurisdiction of the United States. The Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these persons from deprivation of life, liberty, or property without due process of law.").

1. *Thuraissigiam*

That said, not all noncitizens "are entitled to enjoy all the advantages of citizenship," and noncitizens need not "be placed in a single homogeneous legal classification." *Diaz*, 426 U.S. at 78. In *Department of Homeland Security v. Thuraissigiam*, a noncitizen who had been detained twenty-five yards into the United States, just after entering the country, challenged his expedited removal. *See generally* 591 U.S. 103 (2020). He argued that due process required the availability of "judicial review of his allegedly flawed credible-fear proceeding." *Id.* at 138. The Supreme Court disagreed, holding that a noncitizen "at the threshold of initial entry" "has only those rights regarding admission that Congress has provided by statute." *Id.* at 107, 140.

Respondents argue that holding applies here, such that Petitioner is not entitled to any due process protections beyond those Congress has provided. Ultimately, *Thuraissigiam* and the cases it relied upon preclude Plaintiff's due process challenge, but Respondents overstate the cases' broader effect on one's rights.

5

*2. The "Entry Fiction"*

*Thuraissigiam* applies here because of a doctrine known as the "entry fiction." As *Thuraissigiam* puts it, noncitizens "who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" 591 U.S. at 139. "The same [is] true of" noncitizens "detained shortly after unlawful entry." *Id.* at 140.

Some courts have noted that *Thuraissigiam*'s "passing reference" to "those paroled elsewhere in the country" is dicta. *Rodriguez-Acurio v. Almodovar*, No. 2:25-CV-6065 (NJC), 2025 WL 3314420, at *26 (E.D.N.Y. Nov. 28, 2025). But courts in the Fifth Circuit "are generally bound by Supreme Court dicta, especially when it is recent and detailed." *McRorey v. Garland*, 99 F.4th 831, 837 (5th Cir. 2024) (quoting *Hollis v. Lynch*, 827 F.3d 436, 448 (5th Cir. 2016)).

Beyond that, courts have argued that *Thuraissigiam*'s articulation of the entry fiction does not apply in cases like this one for two main reasons: First, the petitioner in *Thuraissigiam* challenged the process for *determining removability*, not for detention. *Rincon v. Hyde*, No. CV 25-12633-BEM, 2025 WL 3122784, at *6 (D. Mass. Nov. 7, 2025*)*; *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *9–10 (W.D. Tex. Sept. 22, 2025); *Rodriguez-Acurio*, 2025 WL 3314420, at *27. Second, *Thuraissigiam* involved someone who was detained twenty-five yards from the border, right after entry, whereas Petitioner lived "with relative freedom" in the United States for years. *E.g.*, *Rincon*, 2025 WL 3122784, at *6; *Lopez-Arevelo*, 2025 WL 2691828, at *9–10; *Rodriguez-Acurio*, 2025 WL 3314420, at *26.

But those distinctions do not change the outcome here. For the proposition that the entry fiction applies to those paroled into the country, *Thuraissigiam* cited *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), *Leng May Ma v. Barber*, 357 U.S. 185 (1958), and *Kaplan v.*

6

*Tod*, 267 U.S. 228 (1925). Those cases read together preclude Petitioner's due process claim independent of whether *Thuraissigiam* itself does so.

3. *Mezei*

*Mezei* involved a noncitizen "permanently excluded from the United States on security grounds but stranded . . . on Ellis Island because other countries w[ould] not take him back." *Mezei*, 345 U.S. at 207. The Court held that "harborage at Ellis Island is not an entry into the United States" for due process purposes, so the petitioner was "treated as if stopped at the border." *Id.* at 213, 215. For that reason, "[w]hatever the procedure authorized by Congress [was], it [was] due process." *Id.* at 212. As such, the Court held that the petitioner's "continued exclusion"— i.e., his detention on Ellis Island, *Zadvydas v. Davis*, 533 U.S. 678, 692 (2001) (noting that the petitioner in *Mezei* was "indefinitely detained" on Ellis Island)—did not violate the Constitution. *Mezei*, 345 U.S. at 215.

The petitioner in *Mezei* was more obviously on the "threshold of entry" than Petitioner here. But the case is still relevant, because the Court applied the entry fiction to dismiss arguments against the petitioner's continued *detention*, not just his inadmissibility determination. *See also Zadvydas*, 533 U.S. at 693–94 ("[B]oth this Court's rejection of Mezei's challenge to the procedures by which he was deemed excludable and its rejection of his challenge to continued detention rested upon" the fact that he was treated "as if stopped at the border."). So the entry fiction applies to some detention-based due process claims.

4. *Leng May Ma and Kaplan*

*Leng May Ma* and *Kaplan* are more factually similar to this case. *Leng May Ma* involved a statute allowing the Attorney General to withhold deportation of certain noncitizens "within the United States." *Leng May Ma*, 357 U.S. at 185–86. The petitioner arrived in the United States

7

and claimed citizenship "on the ground that her father was a United States citizen." *Id.* at 186. She was paroled into the country while her admissibility was being determined, which she argued meant she was "within the United States" for purposes of the statute. *Id.* at 186. The Court disagreed. *Id.* at 190.

*Leng May Ma* was a statutory decision. But it relied heavily on due process caselaw. Most notably, it cited three due process cases for the proposition that "the detention of an alien in custody pending determination of his admissibility does not legally constitute an entry though the alien is physically within the United States." *Id.* at 188 (citing *Mezei*, 345 U.S. at 213; *United States v. Ju Toy*, 198 U.S. 253, 261 (1905); *Nishimura Ekiu v. United States*, 142 U.S. 651, 661 (1892)). In light of that, it found that a noncitizen who had been confined would not be "within the United States" under the statute. *Id.* It then characterized the question before it as "whether the granting of temporary parole somehow effects a change in the alien's legal status." *Id.* The Court answered in the negative, partially but not entirely on statutory grounds—

> The parole of aliens seeking admission is simply a device through which needless confinement is avoided while administrative proceedings are conducted. It was never intended to affect an alien's status, and to hold that petitioner's parole placed her legally 'within the United States' is inconsistent with the congressional mandate, the administrative concept of parole, and the decisions of this Court.

*Id.* at 190.

In sum, *Leng May Ma* is factually analogous to the case at bar—a noncitizen was allowed into the country pending a decision on their admissibility after initially appearing at a port of entry. And the analytical foundation for *Leng May Ma*'s holding was the entry fiction as it had been applied in the due process context. That suggests the entry fiction can apply to someone who, like Petitioner, was allowed to live a life of relative freedom in the United States pending a decision on their admissibility.

8

In *Kaplan*, the petitioner was ordered to be excluded in 1914. 267 U.S. at 229. At that time, she was about thirteen years old, and her father had already moved to the United States. *Id.* She could not be returned to her native country of Russia because of conflict in Europe. *Id.* She was initially kept at Ellis Island but in 1915 was "handed over to the Hebrew Sheltering and Immigrant Aid Society," which had agreed to care for her until she could be deported safely. *Id.* "The Society allowed her to live with her father," which she did. *Id.* Her father was naturalized as a United States citizen in 1920. *Id.* A warrant for her deportation was issued in 1923. *Id.*

The petitioner argued that, because she was "dwelling in the United States" when her father was naturalized, she too was now a citizen. *Id.* at 230. She also argued that a statute of limitations applicable to certain noncitizens "who shall have entered or who shall be found in the United States" prohibited her removal. *Id.* at 230–31. The Court rejected these arguments on the basis that the petitioner was not "dwelling in" and had not "entered" the country "within the meaning of the law." *Id.* That is to say, the Court applied the entry fiction.

While at Ellis Island, the petitioner was "to be regarded as stopped at the boundary line." *Id.* at 230. And even after "her prison bounds were enlarged . . . [,] [s]he was still in theory of law at the boundary line and had gained no foothold in the United States." *Id.* Even though the petitioner was allowed to live a normal life in the United States for many years—and even though her father had become a citizen—the entry fiction still applied.

Like *Leng May Ma*, *Kaplan* was a statutory case. But, also like *Leng May Ma*, it relied on due process cases for the propositions relevant here. Most notably, it relied on a due process case for the proposition that, despite the petitioner's release from Ellis Island, the relative freedom with which she lived, and her father's citizenship, "she was still in theory of law at the boundary line."

9

*Id.* (citing *Nishimura Ekiu*, 142 U.S. at 661). That is, of course, the key point here, and *Kaplan*'s reliance on a due process case for it makes clear that it applies in the due process context.

### 5. Summation and Other Constitutional Claims

In sum, *Mezei* makes clear that the entry fiction applies to some due process challenges based on the detention of a noncitizen. *Leng May Ma* and *Kaplan* make clear that the entry fiction applies to someone who, like Petitioner, initially presented themself at a port of entry but has been allowed to live with relative freedom in the United States while their admissibility is determined. Taken together, that means that Petitioner is treated for due process purposes as though he was stopped at the border. He thus "has only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140. And, again based on *Mezei*, detention can be "regarding admission" such that Petitioner's rights against it are limited.

But that does not mean Petitioner lacks all due process rights. The "entry fiction" and its limitation of rights are limited to "immigration and deportation matters." *Martinez-Aguero v. Gonzalez*, 459 F.3d 618, 623 (5th Cir. 2006); *Thuraissigiam*, 591 U.S. at 140 ("[A]n alien in respondent's position has only those rights *regarding admission* that Congress has provided by statute." (Emphasis added)). "The basis for limiting the constitutional protection afforded excludable aliens has been the overriding concern that the United States, as a sovereign, maintain its right to self-determination." *Lynch v. Cannatella*, 810 F.2d 1363, 1373 (5th Cir. 1987). "As the history of its immigration policy makes clear, this nation has long maintained as a fundamental aspect of its right to self-determination the prerogative to determine whether, and in what numbers, outsiders without any cognizable connection to this society shall be permitted to join it." *Id.* (quoting *Garcia-Mir v. Smith*, 766 F.2d 1478, 1484 (11th Cir. 1985)); *see also Thuraissigiam*, 591 U.S. at 139 (The rule "regarding the due process rights of an alien seeking initial entry" "rests on

fundamental propositions: The power to admit or exclude aliens is a sovereign prerogative; the Constitution gives the political department of the government plenary authority to decide which aliens to admit; and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted." (Cleaned up)). Where the power to admit or exclude noncitizens is not meaningfully implicated, the entry fiction and its limitation on constitutional protections do not apply.

Due process claims remain available where, for example, there is reason to believe one's detention is for an impermissible purpose. *See Demore*, 538 U.S. at 532–33 (Kennedy, J., concurring)[2] ("Were there to be an unreasonable delay . . . in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons."); *Wong Wing v. United States*, 163 U.S. 228, 235 (1896) ("We think it clear that detention or temporary confinement, *as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens*, would be valid." (Emphasis added)); *Lynch*, 810 F.2d at 1373 ("[T]he due process clause affords [noncitizens who are unlawfully] present in the United States protection from federal legislation declaring 'unlawful residence within the country to be an infamous crime, punishable by deprivation of liberty and property.'" (quoting *Wong Wing*, 163 U.S. at 237)). Similarly, because "no identifiable national interests . . . justify the wanton infliction of pain," the entry fiction does not preclude challenges to "gross physical abuse at the hands of state or federal officials." *Martinez-Aguero*, 459 F.3d at 623 (citing *Lynch*, 810 F.2d at 1373–74). These are just a few examples—many due process and other constitutional rights have nothing to do with one's admission to the country and are thus in no way affected by the entry fiction.

---

[2] Justice Kennedy was the fifth vote for the relevant portion of the majority opinion in *Demore*.

But Petitioner does not raise any such claims. He only challenges his detention pending removal proceedings. As discussed above, the entry fiction applies to such detention absent other constitutional problems. *See Mezei*, 345 U.S. at 215. So Petitioner's due process claim must fail.[3]

## CONCLUSION

It is therefore **ORDERED** that Petitioner Samat Goguev's Petition for Writ of Habeas Corpus is **DENIED.**

A final judgment will issue separately.

It is so **ORDERED**.

**SIGNED** this 13th day of January, 2026.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[3] This Court has recently granted many habeas petitions challenging noncitizens' detention without a bond hearing pending the outcome of removal proceedings. *See, e.g.*, *Granados v. Noem*, No. SA-25-CA-01464-XR, 2025 WL 3296314 (W.D. Tex. Nov. 26, 2025); *Abdelalim-Elmetaher v. Thompson*, No. SA-25-CA-01608-XR, 2025 WL 3654267 (W.D. Tex. Dec. 16, 2025); *Estupinan Reyes v. Thompson*, No. SA-25-CA-01590-XR, 2025 WL 3654265(W.D. Tex. Dec. 12, 2025). But unlike here, the respondents in those cases lacked statutory authority to detain the petitioners without a bond hearing. *See, e.g.*, *Abdelalim-Elmetaher*, 2025 WL 3654267, at *3–5. The Court granted the petitions on that basis and did not reach the due process issue. *See, e.g.*, *id.* at *2.